UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RAYMOND CURTIS,

     Plaintiff,

v.                                     CASE NO. 8:25-cv-3492-SDM-CPT

SHERIFF CHAD CHRONISTER, *et. al.*,

     Defendants.

_____/

### **ORDER**

Curtis's complaint alleges that the defendants violated his civil rights both by arresting and detaining him without a valid arrest warrant and by denying him medical care. Also, Curtis complains about various "policies and customs" at the county jail. Curtis moves for leave to proceed *in forma pauperis*. (Doc. 2) Although the complaint is entitled to a generous interpretation, *Haines v. Kerner*, 404 U.S. 519 (1972) (*per curiam*), Curtis must file an amended complaint.

First, Curtis misunderstands the difference between suing a person in their individual or official capacity. The standard civil rights complaint form allows a plaintiff to specify whether he sues a defendant in their individual or official capacity. Curtis incorrectly checked the box for individual capacity for one defendant and incorrectly checked the box for official capacity for other defendants. Official capacity and individual capacity are commonly confused with the requirement that, to assert a civil rights action under 42 U.S.C. § 1983, the defendant must act "under color of law."

The "under color of law" requirement means that the defendant must have acted as an agent of a government — whether state, county, or city.  For example, a government employee who causes an injury while performing a governmental duty acts "under color of law," but the same employee who causes an injury while not performing a governmental duty does not act "under color of law."

An allegation that an employee caused an injury while performing a governmental duty meets the "under color of law" requirement for a claim against the employee in his individual (or personal) capacity.  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law.").  An action against a defendant in his individual capacity seeks to hold the defendant personally liable for his individual acts.

To the contrary, a claim against a defendant in his official capacity requires proof that an official policy or custom caused the alleged injury.  An official capacity claim is actually a claim against the governmental entity without regard to the person who committed the act or to the person who holds the official position.  *Kentucky v. Graham*, 473 U.S. 159, 195 (1985) ("Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell*, 436 U.S. at 690); *Owens v. Fulton Cnty.*, 877 F.2d 947, 952 n.5 (11th Cir. 1989) ("For liability purposes, a suit against a public official in his official capacity is considered a suit against the local government entity he represents.") (citing *Graham*). For example, an official capacity claim against an office holder stays with the office

without regard to the identity of the person holding the office; an individual capacity claim stays with the individual (even if the individual leaves the office) and does not transfer to the next person holding the office.  To establish the liability of a governmental entity, the official policy or custom "must be 'the moving force of the constitutional violation . . . .'" *Polk County, Iowa v. Dobson*, 454 U.S. 312, 326 (1981) (quoting *Monell*, 436 U.S. at 694).  *Accord Barnett v. MacArthur*, 956 F.3d 1291, 1296 (11th Cir. 2020).

Second, several times Curtis asserts that the defendants acted under a policy or custom but simply asserting "policy or custom" without a factual basis is insufficient. An isolated incident is not a "policy or custom," as *Knight through Kerr v. Miami-Dade County*, 856 F.3d 795, 819 (11th Cir. 2017) (brackets original), explains:

> To establish a county's policy, a plaintiff must "identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (*en banc*). As we have recognized, "a county rarely will have an officially-adopted policy of permitting a particular constitutional violation." *Id.* at 1330. Thus, most plaintiffs "must show that the county has a custom or practice of permitting [the violation] and that the county's custom or practice is the moving force behind the constitutional violation." *Id.* (quotations and alteration omitted). Under either theory, a plaintiff must show that the county "has authority and responsibility over the governmental function in issue" and must also "identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue." *Id.*

*See Depew v. City of St. Mary's*, 787 F.2d 1496, 1499 (11th Cir. 1986) ("To establish a policy or custom, it is generally necessary to show a persistent and widespread

- 3 -

practice. . . .   Normally random acts or isolated incidents are insufficient to establish a custom or policy.")

Second, Curtis cannot pursue a claim against Sheriff Chad Chronister simply because he has supervisory responsibility over subordinates.  A claim against a supervisor based on an act by a subordinate asserts a claim under the principle of *respondeat superior*.  Although permitted in a civil tort action, the principle of *respondent superior* is inapplicable in a Section 1983 action.  *Monell v. N.Y.C. Dep't of Social Services*, 436 U.S. 691, 694 (1978);  *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (*en banc*).

Third, to establish liability based on a failure to provide adequate training, a plaintiff must show that the "municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants . . . ."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).  As a consequence, to allege a claim of failure to provide adequate training Curtis must identify what training was inadequate, how that specific training effected the underlying claimed civil rights deprivation, and how each specific defendant was liable for providing that training.  *See Harris*, 489 U.S. at 390–91 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program . . . .  Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct."); *Jones v. Cannon*, 174 F.3d 1271, 1293 (11th Cir. 1999) ("There is no *respondeat superior*

making Defendant Cannon in his official capacity or the Sheriff's Office liable for the wrongful acts of its officers . . . .").

Fourth, Curtis complains about the limited access to the jail's law library, especially because he was proceeding *pro se* in state court.  A confined individual must have both "meaningful access to the courts," *Bounds v. Smith*, 430 U.S. 817, 823 (1977), and "a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement.  But it is that capability, rather than the capability of turning pages in a law library, that is the touchstone." *Lewis v. Casey*, 518 U.S. 343, 357 (1996).  As a consequence, a detainee's access to the courts must be reasonable — not unfettered — and physical access to "turn pages in a law library" is not required.  Moreover, proceeding *pro se* does not create an entitlement to greater access to a jail's library, as *United States. v. Denton*, 535 F. App'x 832, 835 (11th Cir. 2013),[*] explains:

> Nothing in *Faretta [v. California*, 422 U.S. 806 (1975)] or the Sixth Amendment, however, expressly establishes that a defendant who has knowingly elected to proceed *pro se* has a right of access to a law library or legal materials. *See Kane v. Garcia Espitia*, 546 U.S. 9, 10, 126 S. Ct. 407, 408, 163 L. Ed. 2d 10 (2005) (noting, in the context of habeas review under 28 U.S.C. § 2254, that "*Faretta* says nothing about any specific legal aid that the State owes a *pro se* criminal defendant" and so does not "clearly establish" a *pro se* defendant's right to access a law library).

Fifth, apparently Curtis erroneously believes that, while confined in the county jail, he had a due process right to a grievance procedure.  "[A] prisoner does not have a

---

[*]  "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

constitutionally protected liberty interest in an inmate grievance procedure." *Thomas v. Warner*, 237 F. App'x 435, 437–38 (11th Cir. 2007). *See also Baker v. Rexroad*, 159 F. App'x 61, 62 (11th Cir. 2005) (holding that a prison inmate grievance procedure is not constitutionally mandated, and therefore a prison official's failure to take corrective action upon prisoner's filing of a grievance is not a violation of due process); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."). A prison official's failure to process a grievance, without more, is not actionable under Section 1983. *Thomas*, 237 F. App'x at 438 ("Plaintiff 's allegations that prison officials failed to comply with the prison's voluntary grievance procedures does not state a due process claim.").

Sixth, Curtis lists some asserted violations as a "count" and others as a "claim." For clarity, Curtis must specify the asserted violations as separate "counts" in which he must identify which individual defendant is responsible for the alleged violation and the date of the alleged violation. The initial complaint fails to include both requirements for each alleged violation.

Seventh, some of Curtis's allegations may challenge the validity of his detention. Under *Preiser v. Rodriquez*, 411 U.S. 475, 500 (1973), if a state prisoner challenges the fact or duration of confinement, a writ of habeas corpus is the exclusive federal remedy. Although Curtis is confined as a pre-trial detainee, the preclusion against challenging imprisonment under a state court judgment applies equally to a pre-trial detainee. *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), precludes Curtis from challenging the

validity of his confinement by a civil rights action instead of an application for the writ of habeas corpus.

> We hold that, in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck* requires dismissal of the civil rights complaint if a ruling in the plaintiff's favor questions the validity of confinement. Curtis has no Section 1983 claim unless and until he prevails on habeas corpus. "[A] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Heck*, 512 U.S. at 489–90.

Curtis must file an amended complaint, which must be complete because an amended complaint supersedes the original complaint and, as a consequence, "specific claims made against particular defendants in the original complaint are not preserved unless they are also set forth in the amended complaint." *Gross v. White*, 340 F. App'x 527, 534 (11th Cir. 2009). *See Fritz v. Standard Sec. Life Ins. Co.*, 676 F.2d 1356, 1358 (11th Cir. 1982) ("Under the Federal rules, an amended complaint supersedes the original complaint."). *See also Lane v. Philbin*, 835 F.3d 1302 n.1 (11th Cir. 2016)

(describing as "irregular" a district court's construing together both an original and an amended complaint). In other words, the amended complaint must be fully complete within itself and not rely on allegations in any earlier complaint.

Lastly, Curtis is advised that, if he fails either to move for an extension of time or to file an amended complaint within the time allotted, this order dismissing the initial complaint will become a final judgment. *Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 720–21 (11th Cir. 2020) ("[A]n order dismissing a complaint with leave to amend within a specified time becomes a final judgment if the time allowed for amendment expires without the plaintiff [amending the complaint or] seeking an extension. And when the order becomes a final judgment, the district court loses 'all its prejudgment powers to grant any more extensions' of time to amend the complaint.") (quoting *Hertz Corp. v. Alamo Rent-A-Car, Inc.*, 16 F.3d 1126 (11th Cir. 1994)).

## A CAUTION TO MR. CURTIS

Litigation in federal court is difficult and requires timely compliance with applicable rules, including the Federal Rules of Civil Procedure, the Local Rules, the Federal Rules of Evidence, and several procedural, discovery, and other orders. A judge cannot assist a party, even a pro se party, in conducting an action, and a plaintiff enjoys only a limited opportunity to amend the complaint. Therefore, Curtis is strongly advised — before amending the complaint — to obtain legal advice and assistance from a member of The Florida Bar.

The civil rights complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE** to the filing of an amended complaint within **THIRTY (30) DAYS**.  The failure to timely file an amended complaint will result in the dismissal of this action without further notice.

ORDERED in Tampa, Florida, on April 30, 2026.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE